|   |   |
|---|---|
| 84 | 547 |
| 102 | 395 |

C. AULTMAN & COMPANY, Appellants, v. CHARLES D. GOLDSMITH, Appellee.

1. Pleading and Practice: CONTRACTS: EVIDENCE. Under an allegation in a petition that the defendant orally promised to pay the amount of a note, which he had received for collection, and had without authority surrendered to the maker in exchange for certain personal property, *held*, that the plaintiff was not entitled to recover upon the implied promise of the defendant to pay said note by reason of his wrongful surrender of the same to the maker.

2. ———: EVIDENCE: WITHDRAWING ISSUE FROM JURY. Where an amendment to a petition, filed for the purpose of conforming the pleadings to the proofs, presented the entire case of the plaintiff under the evidence, *held*, that an instruction to the jury withdrawing from its consideration the issue presented by the original petition was without prejudice to the plaintiffs.

3. Attorney and Client: CONTRACTS: EVIDENCE: INSTRUCTIONS TO JURY. Concerning two of the notes which the defendant was employed to collect, he wrote the plaintiffs, "We will engage to collect you one hundred and fifty dollars, with interest from date, on or before six months, and also collect all of our charges" from the maker. In the same letter it was represented that the maker of the notes had some exempt property which he was willing to sell to raise the above amount, and that this was all he could do. Again the defendant wrote, "We may have to hold this (the release of a

mortgage) a few days to dispose of property, but will return it as soon as possible. Will allow you eight per cent. interest, however, from this date. We will be personally responsible for the fulfilling of this proposition." The plaintiffs wrote in reply to the first of the above letters, "Will accept your proposition, i. e., that upon the payment of one hundred and fifty dollars, with interest from date, we will turn over to you those two notes." *Held*, that the court erroneously instructed the jury upon the above evidence, that a contract had been made between the plaintiffs and the defendant whereby the latter was personally to pay to the plaintiffs the sum of one hundred and fifty dollars, and interest thereon, in full of the two notes, and that said sum was accepted in full satisfaction thereof; that the question of such agreement should have been left to the jury.

*Appeal from Sac District Court.*—HON. J. H. MACOMBER, Judge.

THURSDAY, FEBRUARY 4, 1892.

ACTION to recover the avails of certain promissory notes. Judgment for the defendant and the plaintiffs appeal.—*Reversed.*

*Cole & McVey*, for appellants.

*F. M. Powers, Elwood & Jane, Jas. H. Tait* and *W. H. Hart*, for appellee.

GRANGER, J.—I. The plaintiffs placed in the hands of the defendant, as an attorney, three notes for collection, numbered, for convenience of designation, 129,436, 129,437 and 129,438. The first of the three notes was for one hundred and sixty-six dollars and sixty-seven cents, with interest, on which had been made two small payments. The consideration of the three notes was a certain threshing machine and power, which were mortgaged to secure the first note, the other two being secured by a second mortgage on real estate. This action is to recover from the defendant the amount of these notes, and, as the questions we are to consider bear a close relation to the issues, it is important to have them well in mind.

1. PLEADING and practice: contracts: evidence.

The liability of the defendant, as it is sought to be established, depends upon two transactions; the first having reference to the first note, number 129,436, and the other to the remaining two notes. The original petition was in one count, and declared only for money had and received in the collection of the notes. At the close of the testimony the pleadings were amended to conform to the proofs, and in one count of the petition are the allegations as to the defendant's liability for note number 129,436, and briefly as follows: That, after the receipt of said note by the defendant, he, without authority from the plaintiffs, accepted from the maker, in full payment of the note, the threshing-machine and power mortgaged to secure it, and surrendered the note; and then follows: The plaintiffs further state that afterwards, when the plaintiffs learned of such surrender of the note, and the taking by the defendant of the machine and power in full payment thereof, they sent their agent to see said defendant, and the said defendant told their said agent, J. P. Byerly, that he had taken the machine in full payment of said note without authority from the plaintiffs, and that he recognized his liability therefor, and that he would pay to the plaintiffs, some time in the course of the following fall, the amount due upon said note, which he had surrendered to the maker thereof; "that the plaintiffs accepted the promise of the said defendant so to pay, but the defendant has failed, neglected and refused to pay said note, or any part thereof, whereby the plaintiffs are entitled to recover from said defendant the amount of said note." The answer admits the taking of the machine and power without authority, denies the alleged promise to pay the note, and pleads certain facts not important in this connection. The plaintiffs, upon this issue, asked the following instruction:

"2. The court instructs you that an attorney or lawyer to whom a note is sent for collection has no right or authority, without the consent of the owner or

person sending such note for collection, to receive anything in payment therefor except money; and that if the defendant in this case did, without authority therefor, take the machine from I. C. Powell, the maker of said note, as and for full payment of said note, and thereupon surrendered said note to said Powell, and took the machine into his own possession, then the defendant is liable to the plaintiffs for the amount due upon said note at the time he exchanged the same for said machine, together with interest thereon at the rate of six per cent. per annum from the date of such surrender down to the date of your verdict, and your verdict should be for the plaintiffs for that amount."

The instruction was refused, and the court said to the jury: "The plaintiffs seek to recover upon the express promise of the defendant to pay the amount of the first note; and, if defendant is liable in this action for this note, it must be on this promise having been made by him."

It is said by the appellant that if the defendant, without authority, took the machine and surrendered the note, the law implies his promise to pay the note; and it is urged that the district court wrongfully interpreted the issue in the case. The court was not to define the rules under which the defendant might be liable, but the rule of his liability under the pleadings. The count of the petition clearly declares on an express oral contract. The contract, in such a case, is the basis of the liability and not the tort. The tort is only necessary in proof to show a consideration for the verbal promise. We may plainly illustrate by supposing the promise to have been in writing instead of verbal. The law would then have presumed a consideration. Could it be thought, in an action on the written promise to pay, that there could be a recovery on a promise implied by the law because of the wrongful act? As well might one attempt to recover on a verbal promise under such

a plea. The written promise, the verbal promise and the promise implied by law depend for their establishment on different proofs, and are, within the meaning of the law, separate causes of action, and must be pleaded, if relied upon in the same action, in separate counts. Code, sec. 2646. Of course, if both are pleaded in the same count without objection, they will stand; but we are not to assume such defect or purpose in pleading. The language of the count indicates only a purpose to recover on the express promise. The disposition of the question, to our minds, in no way involves the legal proposition of a right to "waive the tort, and sue in *assumpsit.*" That proposition, as a rule of law, could hardly be doubted. As the court properly presented the issue, there was no error in giving or refusing the instruction.

II. The court, in effect, took from the jury the consideration of the case, as to the first count of the petition, by saying: "You are instructed that the count of the petition wherein a collection is alleged, and a recovery sought thereon, is not to be considered by you." This action is urged as error, but we think it is not. The amendment to the petition shows that the original was filed without a knowledge of the facts, and to recover money received in payment of the notes. The amendment filed after the close of the testimony presents the entire case under the testimony, and no prejudice could result from the action of the court.

III. As to the two remaining notes, there was a correspondence between the plaintiffs and the defendant, as a result of which the notes were surrendered, and the mortgage securing the same canceled, on the payment to the plaintiffs of one hundred and fifty dollars. The principal of these two notes aggregates three hundred and sixty-one dollars and thirty-four cents, which was due, with accumulated interest. By the amendment to the petition,

2. ——: evidence: withdrawing issue from jury.

it appears that the notes were surrendered upon representations by letter that no more than one hundred and fifty dollars could be realized from the maker, I. C. Powell, when, in fact, the defendant received a pair of mares of the value of, and for which he received, two hundred and sixty-two dollars and fifty cents; and the plaintiffs say the facts were concealed from them as to how much was to be paid, and that they should receive the full amount realized.  The defendant's claim under his answer is that he paid the one hundred and fifty dollars, with interest thereon, "on his own account," for the plaintiffs' interest and ownership in the notes, and remitted all fees and expenses due him, and that he received the mares from Powell on his own account, and that they were worth no more than two hundred dollars. He further says that he acted in "good faith and conscience."  Upon this branch of the case the court said to the jury:

"Upon the question of the two notes upon which the two mares were taken by Mr. Goldsmith, you are instructed that the plaintiffs allege that they placed the said notes in the hands of Mr. Goldsmith for collection. This the defendant admits.  It appears from the evidence that Mr. Goldsmith made a contract with the plaintiffs whereby he was personally to pay the plaintiffs the sum of one hundred and fifty dollars and interest thereon in full of the two notes, and that the plaintiffs accepted and received the one hundred and fifty dollars in full satisfaction and payment of the two notes.  It further appears that Mr. Goldsmith took in satisfaction of the notes two certain black mares from Mr. Powell, which he sold by note for two hundred and sixty-two dollars and fifty cents."

It is urged to us that the court erred in its statement of the facts under the evidence, by which the jury is told that "it appears from the evidence that Mr. Goldsmith made a contract with the plaintiffs whereby

he was personally to pay the plaintiffs the sum of one hundred and fifty dollars, and the interest thereon, in full of the two notes, and that the plaintiffs accepted and received one hundred and fifty dollars in full satisfaction and payment of the two notes." The court did not reach this conclusion from the state of the pleadings, but from the evidence; and we think the court was clearly in error. As we understand, the evidence on this branch of the case consists of a correspondence, which is in the record; and, to determine the question, we must produce the essential part of it. The letters appear in the order of their respective dates as follows:

"SAC CITY, IOWA, September 7, 1886.

"J. C. McMath, Esq., Canton. Ohio.

"DEAR SIR:—We write you to-day concerning the two notes, of one hundred eighty dollars and sixty-seven cents each, made by I. C. Powell to C. Aultman & Co., and secured by second mortgage upon his real estate. The first mortgage has been foreclosed, as you have been notified before, and amount of said judgment, cost and interest is something over one thousand, five hundred dollars, on eighty acres of land. He has nothing else that can be utilized in making your claim, but we have a chance by which we can realize for you from one hundred and twenty-five to one hundred and fifty dollars, provided the notes are delivered and mortgage released. Unless you think there is something in redeeming the land from the sheriff's sale, we would advise you to make this deal, or empower us to do so. Please advise us at once. The note secured by chattel mortgage we have arranged for in another way, concerning which we shall write you fully in a few days. Yours, respectfully,

"GOLDSMITH & HART."

"SAC CITY, IOWA, September 14, 1886.

"J. C. McMath, Esq., Canton, Ohio.

"DEAR SIR:—In reference to yours of sixteenth instant, we would say that we cannot see how you

can get over one hundred and fifty dollars out of these claims, net to you, *i. e.*, we will engage to collect you one hundred and fifty dollars, with interest from date, on or before six months, and also collect all our charges from Mr. Powell. We think this the best you can do, unless you wish to redeem the land, when you might get two hundred dollars or a little more out of it by holding the land. Please let us know if you will accept our offer, as whatever is done should be done quickly.

"Yours,

"GOLDSMITH & HART.

"P. S. Of course you understand that you will have to release the mortgage and deliver the notes. Mr. Powell has some exempt property which he is will ing to sell to raise this amount, and it is all he can do."

"CANTON, OHIO, September 17, 1886

"*Messrs. Goldsmith & Hart, Sac City, Iowa:*

"GENTLEMEN: I have your letter of the fourteenth in regard to the proposition to pay one hundred and fifty dollars in full of our two notes, numbers 129,437 and '38, against I. C. Powell. Have considered the matter further, and will accept your proposition, *i. e.*, that, upon the payment of one hundred and fifty dollars with interest from date, we will turn over to you those two notes, and cancel the second mortgage which we have upon the real estate. Respectfully yours,

"J. C. MCMATH."

"SAC CITY, IOWA, September 23, 1886.

"*J. C. McMath, Esq., Canton, Ohio:*

"DEAR SIR: Yours of seventeenth at hand; contents noted. You can send us release of the mortgage, with instructions to deliver the same, together with the notes secured by same, upon the payment of one hundred and fifty dollars net to you, with eight per cent. interest from this date. We may have to hold this a few days to dispose of property, but will turn it as soon as possible. Will allow you the eight per cent. interest, however, from this date. We will be person-

ally responsible for the fulfilling of this proposition, provided release is received at once.

"Yours respectfully,

"GOLDSMITH & HART."

"CANTON, OHIO, September 27, 1886.

"*Messrs. Goldsmith & Hart, Attorneys, Sac City, Iowa:*

"DEAR SIRS: Yours of twenty-third inst., referring to notes 129,437 and 129,438, of I. C. Powell, has been received. The satisfaction piece which you sent not being well adapted to the circumstances, I have used one of our own forms. The president of C. Aultman & Co. is seldom here, and Mr. Fogle is fully authorized. I presume our form will do as well. You are empowered to deliver the writing to Mr. Powell, together with notes 129,437 and 129,438, upon the payment by him of net one hundred fifty dollars and interest from date. Respectfully,

"J. C. MCMATH."

"SAC CITY, IOWA, September 29, 1886.

"*James C. McMath, Canton, Ohio:*

"DEAR SIR: Yours of the twenty-fifth instant received, with satisfaction piece, as stated.

"Yours respectfully,

"GOLDSMITH & HART."

The only justification for the court's statement of what the evidence establishes is that such facts only are deducible from the correspondence. If the evidence is conflicting, or other conclusions of fact might legally be found, the action of the court cannot be sustained. To our minds the import of this correspondence as a whole, and the particular statements therein, are against the conclusion of the district court,—at least to the extent of making it a question for the jury. The defendant's letters nowhere indicate an intent to purchase the notes, but, in making the proposition to pay one hundred and fifty dollars, it is based upon what the maker is able to do, and that he is willing to sell his exempt property to raise the amount. The letter

of September 23, which is a significant one, particularly for the defendant, suggests instructions as to the delivery of the release and notes, which is inconsistent with the thought of ownership by the defendant. The tone of the letter is consistent only with the relation of principal and agent. If it was a contract of sale, the payment of the one hundred and fifty dollars would be the defendant's obligation; and why should there be a pledge of personal responsibility? One does not usually pledge his personal responsibility for his legal obligations. The language indicates a pledge of responsibility for the obligation or "proposition" of another. The answer to this letter of September 23 indicates what was understood by the instructions asked, for it says: "You are empowered to deliver the writing to Mr. Powell, together with the notes, * * * upon payment by him of net one hundred and fifty dollars and interest from date." In the letter of September 14 there is simply an engagement to collect from Mr. Powell one hundred and fifty dollars and defendant's charges; and upon this engagement is the letter of September 17, agreeing to turn over the notes to the defendant. This is followed by the suggestion from the defendant as to the instructions for the delivery of the notes, and the instructions for their delivery to Powell, of September 27. Without doubt the court was in error in stating to the jury the facts to be found from the evidence. The cause was submitted on the theory of the facts being as stated, and the error was surely prejudicial.

Some other questions are argued that are unlikely to arise on another trial, after the discussion we have given the case, and we need not consider them. For the error suggested the judgment is REVERSED.