THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant, v. GEORGE HAYWOOD & SON, GEORGE HAYWOOD, and MURRY HAYWOOD.

**Contracts:** CONSTRUCTION. A continuing contract for the sale of
1  ice, made August 8, provided that all money due to the buyer on re-sale of ice delivered to it on and after August 1 should be assigned to the seller for security, and that the seller was to furnish out of the money so assigned enough to pay freight on "the ice so furnished," not to exceed a certain sum per month. *Held*, that the contract did not require the seller to pay freight on the ice furnished after August 1, but before date of the contract.

**Pleading:** COUNTS. Where a petition by a carrier in one count sets
2  out a cause of action for freight charges under a contract of defendant with the consignee to pay them, the fact that it necessarily avers a shipment by defendant, and the amount of the freight charges thereon, does not authorize the presumption that it was intended thereby to state a second cause of action independent of the contract; and such pleading is not violative of Code, section 2646, requiring causes of action to be separately stated.

*Appeal from Clinton District Court.*—HON. W. F. BRANNAN, Judge.

MONDAY, MAY 24, 1897.

ACTION to recover four hundred and forty-three dollars and fifty-five cents as freight charges on twelve car loads of ice shipped from Clinton, Iowa, to Kansas City, Kan. After the evidence was introduced, the court directed the jury to return a verdict for

defendants, which was done, and judgment rendered thereon.   Plaintiff appeals.—*Affirmed.*

*Robert Mather* and *A. P. Barker* for appellant.

*Walsh Bros.* for appellees.

LADD, J.—Between the second and sixth days of August, 1889, the defendants shipped twelve car loads of ice over plaintiff's road, consigned to the Kansas City Ice Company, and the freight charges for the transportation of this ice are claimed in this action. The petition is in one count, and is based on a written contract entered into by the defendants and the partners composing the Kansas City Ice Company, August 8, 1889, whereby all moneys due such company for ice delivered on and after August 1, 1889, and from the government of the United States for ice, were assigned to defendants, but were to be collected by H. T. Carnahan and F. B. Lucas, of the ice company, and deposited to the credit of the defendants in the Exchange Bank, in Kansas City, Kan.   Portions of the contract are as follows:   "And that the same shall remain in said bank, subject to the draft or order of the said party of the second part [defendants], until all ice that has been heretofore or may be hereafter delivered by said parties of the second part to said parties of the first part shall be fully paid off, including expense they have been to loading," etc.   "3d.   It being understood that said parties of the second part shall, out of said money so collected, furnish sufficient money to pay the freight upon the ice so furnished, and pay the running expenses of said parties of the first part in the delivery and sale of said ice, not to exceed the amount of nine hundred dollars ($900.00) per month. * * * And the parties of the second part hereby agree to and with

the said parties of the first part to deliver them ice for the purpose of carrying on the business as above set forth in such quantities as may be needed from this day on during this season." The contract also provides that the business shall be carried on for the parties of the second part, and that the moneys collected shall belong to them; that the cost of ice to be delivered shall be one dollar and seventy-five cents per ton at the defendants' ice house in Clinton; and that after paying for the ice, the cost of running the business, the freight, and other expenses, anything remaining shall be the property of the parties of the first part (Kansas City Ice Company), as their salary for transacting the business. The district court excluded all evidence, except the contract referred to, on the ground that the defendants were not bound thereby to pay the freight charges in controversy.

I. It will be observed that the transportation of the ice occurred before the contract was made. Does it relate to freight on ice previously shipped? No ice was assigned to defendants,—only the moneys due on that already delivered. The second paragraph requires the application of all moneys collected, due defendants for ice heretofore or hereafter to be delivered by them. There would be some force in the contention of appellant that the provision for the payment of "freight upon the ice so furnished," contained in the third paragraph of the contract, referred to "ice heretofore or hereafter to be delivered," in the second paragraph, were it not for the limitation of the cost of freight and expenses of delivery and sale of ice to nine hundred dollars per month. The parties certainly could not have intended thereby to limit the cost per month in the past. The contract explicitly provides for the shipment of ice and transaction of business in the future, and we think the limitation in the cost of freight and expenses per month clearly refers to

transportation charges and expenses for sale and delivery thereafter to be incurred. The contract must be considered in its entirety, in order to deduce therefrom its true meaning, and, when so considered, such freight and expenses only appear to have been contemplated.

II. It is insisted by the appellant that evidence should have been admitted tending to establish the liability of defendants as consignors of the ice. This is undoubtedly an afterthought. The contract heretofore mentioned is made a part of the petition, and the claim based thereon is fully set out. It is true that the petition incidentally states that defendants "shipped and consigned to the Kansas City Ice Company, as aforesaid, twelve (12) car loads of ice, upon which the freight charges due the plaintiff therefor amounted to the sum of four hundred and forty-three dollars and 55-100 ($443.55) dollars, no part of which has been paid." But this is an averment necessary to be made in order to recover on the contract. The petition is in one count, and the statute requires each cause of action to be stated wholly in a count or division by itself. Code, section 2646. If more than one cause of action is pleaded in a separate count or division, and no objection made, recovery may be had on all, but in such event it must appear that this was intended. Where the right of the recovery is based upon a written contact, as in this case, and the averment of facts constituting another cause of action is necessary to bring the remedy sought within the terms of the contract, then it will be assumed that only one cause of action was intended. In other words, parties are presumed to follow the requirements of statute in preparing their pleadings, and a single count or division of a petition will not be construed to state two causes of action unless the purpose of the pleader so to do clearly appears. *Aultman & Co. v. Goldsmith*, 84 Iowa, 547 (51 N. W. Rep. 43).

The part of the paragraph quoted contains the only reference to the liability of the defendants as consignors, in an elaborate petition, of seven paragraphs, setting out in detail the facts constituting the alleged right of action on the contract. The court correctly held that only one cause of action was stated.— AFFIRMED.